**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 25-20047-CIV-BECERRA/TORRES

ENRICO DELUCA,

      *Plaintiff,*

v.

MW INTERNATIONAL VENTURES LLC
d/b/a SOCIAL MOBILE and
ROBERT MORCOS, individually,

      *Defendants.*

_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

      This matter is before the Court on Defendants MW International Ventures LLC d/b/a/ Social Mobile ("Social Mobile") and Robert Morcos' ("Morcos," and, together, "Defendants") motion to dismiss Plaintiff Enrico DeLuca's First Amended Complaint. [D.E. 7]. Plaintiff timely filed his response in opposition [D.E. 9], and Defendants timely replied [D.E. 14]. Therefore, Defendants' motion is now ripe for disposition. For the reasons discussed below, Defendants' motion to dismiss should be **DENIED**.[1]

---

[1] Defendants' motion to the undersigned Magistrate Judge for a report and recommendation. [D.E. 15].

1

## I.    BACKGROUND

On January 6, 2025, Plaintiff filed their Complaint, claiming that Defendants had violated the FLSA by failing to pay overtime wages and that Defendants had done so because they misclassified Plaintiff as exempt. [D.E. 1]. On February 18, 2025, Defendants filed their Motion to Dismiss, arguing that plaintiff "fail[ed] to allege **any** facts to support **any** claim that Plaintiff was misclassified as an exempt employee," [D.E. 7 at 4] (emphasis in original), and that because of Plaintiff's earlier admissions in an EEOC Charge and Plaintiff's LinkedIn profile, the allegations in the complaint were implausible. [D.E. 7].  But Defendants did not file a motion for judicial notice of the EEOC complaint nor Plaintiff's LinkedIn profile at that time.

On April 9, 2025, we filed a Report and Recommendation, which recommended granting the motion to dismiss, finding that "Plaintiff does need to make some factual allegations about the nature of his work and the employer's business." [D.E. 17 at 10–11]. We also recommended granting Plaintiff leave to amend the Complaint to cure the deficiencies mentioned in the R&R. *Id.* at 12. On May 5, 2025, Judge Becerra, adopted the R&R, thereby dismissing the Complaint and allowing to file an amended complaint. [D.E. 20].

Plaintiff filed the First Amended Complaint that same day. [D.E. 21]. According to the First Amended Complaint, Plaintiff worked for Defendants as an inside sales employee from March 11, 2024, to August 29, 2024.  [D.E. 21 ¶¶ 16, 18]. Plaintiff was hired as an inside sales employee "for the specific purpose of selling to AT&T." *Id.* ¶ 17.  Accordingly, "Plaintiff's job was to sell," which included "meeting

2

sales deliverables and targets." *Id.* ¶¶ 18, 21.  Plaintiff's role was largely remote and did not require him to supervise or otherwise manage employees.  *Id.* ¶¶ 22–24.  He also he did not "exercise independent authority over significant [or managerial] matters" for the business.  *Id.*  Further, Plaintiff alleges that he was misclassified as an exempt employee under the FLSA and thus was not appropriately paid overtime wages, despite working "more than forty (40) hours per week."  *Id.* ¶¶ 22, 31.

Furthermore, according to the First Amended Complaint, Social Mobile is a company that provides its clients, whom are across multiple industries, bespoke mobility solutions, including "hardware design, software integration, deployment, and ongoing support services for clients across the United States and around the world." *Id.* ¶ 9. In doing so, during the relevant period, Social Mobile grossed $500,000 annually, "employed two or more employees that customarily, continually, and regularly handled goods and materials" purchased from outside of Florida or that "had previously traveled in interstate commerce," and engaged in activities such as "solicit[ing] funds from non-Florida sources, us[ing] telephonic transmissions going over state lines to do its business, and transmit[ing] funds outside the State of Florida," as well as accepting payments in multiple forms, like checks and wire transfer, from outside of Florida. *Id.* ¶¶ 10, 12–14. Additionally, the company "customarily and regularly sells goods and services across state lines." *Id.* ¶ 11.

## II.    APPLICABLE PRINCIPLES AND LAW

In ruling on Defendants' motion to dismiss, the Court takes the allegations in the Complaint as true and construes the allegations "in the light most favorable to

the plaintiff." *Rivell v. Private Heath Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)). "When considering a motion to dismiss, all facts . . . 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long City*, 999 F.2d 1508, 1510 (11th Cir. 1993)). A motion to dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted; alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Factual content gives a claim facial plausibility.

### III.    ANALYSIS

#### A.    Motion for Judicial Notice

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "In order for a fact to be judicially noticeable under Rule 201(b), indisputability is a prerequisite." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). "Where it is proper for a court to take judicial notice of a fact, consistent with Federal Rules of Evidence 201(c)(2), the Court must take notice of such fact where a party requests it and the court is supplied with the information to be noticed." *Scanz Technologies, Inc. v. JewMon Enters., LLC.*, No. 20-22957-Civ-Scola, 2021 WL 65466, at *5 (S.D. Fla. Jan. 7, 2021).

Defendants filed a motion for judicial notice of Plaintiff's EEOC Charge of Discrimination and Plaintiff's LinkedIn profile. As will be discussed below, because a filing with a governmental entity like the EEOC is not subject to reasonable dispute, we find that the motion be granted as to Plaintiff's EEOC Charge. The same cannot be said, however, of social media posts that are not presumptively authenticated and are potentially subject to reasonable dispute.  We thus find that that the motion must be denied as to Plaintiff's LinkedIn profile.

First, as to the EEOC charge, it is well established in this circuit and elsewhere that courts are permitted under their wide discretion to apply Rule 201 and take judicial notice of documents that are legally required to be filed with the government.

*See, e.g., Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1277-79 (11th Cir. 1999). That is because such public documents are not reasonably in dispute, are presumptively authenticated, cannot be a surprise to a litigant that filed such documents, and should be considered as a whole rather than by self-serving reliance on only snippets of the documents. *Id. See also Ellison v. Postmaster Gen., U.S. Postal Serv.*, 2022 WL 4726121, at *6-7 (11th Cir. Oct. 3, 2022) (affirming consideration of EEOC and other public documents attached to motion to dismiss based on taking judicial notice).

These considerations fully apply to EEOC charge filings, which are filed by statute to satisfy a plaintiff's exhaustion requirement, and cannot possibly be a surprise to the plaintiff. *See, e.g., Lay v. Storm Smart Bldg. Sys., Inc.*, No. 2:23-CV-584-JLB-KCD, 2024 WL 3470295, at *2 n.5 (M.D. Fla. July 19, 2024), *appeal dismissed,* No. 24-13439-G, 2024 WL 5341235 (11th Cir. Nov. 15, 2024) (taking judicial notice of EEOC charge on motion to dismiss); *Ellison v. Brennan*, No. 3:19-CV-726-J-34PDB, 2020 WL 2523287, at *2 (M.D. Fla. May 18, 2020), *aff'd sub nom. Ellison v. Postmaster Gen., United States Postal Serv.*, No. 20-13112, 2022 WL 4726121 (11th Cir. Oct. 3, 2022) (same); *Moore v. Potter,* No. 3:04-cv-1057-J-32HTS, 2006 WL 2092277, at *5 (M.D. Fla. July 26, 2006) (exercising discretion to take judicial notice of "various filings and decisions of administrative agencies," including the USPS and EEOC); *Hicks v. City of Alabaster, Ala.,* No. 2:11-CV-4107-RDP, 2013 WL 988874, at *7 n.5 (N.D. Ala. Mar. 12, 2013) ("[W]hen considering a motion to dismiss, the court may take judicial notice of the contents of relevant public records, which  include EEOC Charges and  Right  to  Sue  Letters."); *Mann  v.  Geren,*  No.

CV407-140, 2008 WL 1766779, at *1 n.2 (S.D. Ga. Apr. 17, 2008) ("The Court takes judicial notice of plaintiff's EEOC actions as they are matters of public record.").

We are thus fully within our considerable discretion under Rule 201 to take judicial notice of Plaintiff's EEOC charge documents, upon Defendant's request in evaluating the merits of its motion to dismiss.

Turning to the LinkedIn profile, this Court has previously expressed skepticism towards judicially noticing websites that are non-government published websites. *See Scanz Technologies*, 2021 WL 65466 at *6; *Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296-Civ, 2017 WL 3503371, at *7-8 (S.D. Fla. Aug. 17, 2017); *Pyure Brands, LLC v. Nascent Health Science LLC*, No. 18-cv-23357, 2019 WL 7945226, at *3 (S.D. Fla. March 4, 2019).  More directly, other courts have expressly found social media posts, including LinkedIn job descriptions, can be subject to reasonable dispute, and are therefore not properly suitable for judicial notice. *See Palacios v. Ga. Shift*, No. 2:21-cv-00030-RWS, 2021 WL 3493165 (N.D. Ga. June 23, 2021) ("[A] LinkedIn profile job description is not strong evidence of what duties an employee actually performs, as employees tend to exaggerate their responsibilities on online platforms. More accurate details regarding Plaintiff's job description will arise during discovery.").

Upon review of the authorities that have addressed this question, we agree that LinkedIn profiles, even though commonplace in modern-day commerce, must still be authenticated through an evidentiary showing and are, hence, ill-suited for judicial notice purposes. The information set forth on such a profile may, of course,

serve as impeachment, and can otherwise be substantively confirmed as authentic, but further factual inquiry has to be made.  The Court should not exercise discretion and take judicial notice of the accuracy of such a commercial product.  *See, e.g., Mason v. Midland Funding LLC*, No. 1:16-CV-02867-CC-RGV, 2017 WL 6994577, at *11 (N.D. Ga. July 27, 2017), *report and recommendation adopted as modified,* No. 1:16-CV-2867-CC, 2017 WL 8186866 (N.D. Ga. Sept. 29, 2017) (declining to exercise discretion and take judicial notice of LinkedIn profile for motion to dismiss); *Shkolnikov v. JPMorgan Chase Bank*, No. 12-03996 JCS, 2012 WL 6553988, at *2 (N.D. Cal. Dec. 14, 2012) ("the Court does not take judicial notice of Deborah Brignac's LinkedIn profile because its contents are not capable of ready and accurate determination by resort to sources whose accuracy cannot reasonably be questioned."); *Ibey v. Taco Bell Corp.,* No. 12-CV-0583-H (WVG), 2012 WL 2401972, at *1 (S.D. Cal. June 18, 2012) (citation omitted) ("LinkedIn is not a source whose accuracy cannot be reasonably questioned.").

Additionally, even if the Court were to take judicial notice of the LinkedIn profile, "it would be for the very narrow purpose to take note of the fact that" the LinkedIn profile exists "and not for the content of that" profile. *Scanz*, 2021 WL 65466, at *6.  Here, Defendant's reliance on the LinkedIn profile goes much further than that.  Defendants are relying on the accuracy of the information contained in the profile in support of the pending motion.  The Court will not grant this aspect of the motion for judicial notice and will not accept that invitation.

### B. *Principles of the FLSA*

The FLSA mandates that an "employee[ ]" who is "engaged in interstate commerce" must be paid an overtime wage of one and one-half times their regular rate for all hours they work in excess of forty hours per week.  29 U.S.C. § 207(a).  If a covered employee is not paid the statutory wage, the FLSA creates for that employee a private cause of action against their employer for the recovery of unpaid overtime wages and backpay.  *Id.* § 216(b).[2]  As defined by the statute, and subject to certain exceptions, an employee is "any individual employed by an employer."  *Id.* § 203(e)(1).  The statutory definition of "employer" is similarly broad; it encompasses both the employer for whom the employee directly works as well as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  *Id.* § 203(d).  Therefore, the FLSA contemplates that a covered employee may file suit directly against an employer that fails to pay him the statutory wage or may make a derivative claim against any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment.  *See Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986) (citing *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)) (explaining that a person is derivatively liable if he is intimately involved in the day-to-day operations of an employer that would be directly liable under FLSA).

---

[2] Section 216(b) provides in relevant part, "[a]ny employer who violates the provisions of [29 U.S.C. § 207] shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

To qualify for FLSA overtime, an employee must demonstrate that she is covered by the FLSA. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1299 (11th Cir. 2011). There are two possible types of FLSA coverage. *See, e.g.*, *Ares v. Manuel Diaz Farms, Inc.*, 281 F.3d 1054, 1056 (11th Cir. 2003) (citing 29 U.S.C. § 207(a)(1)). First, an employee may claim "individual coverage" if he regularly and "directly participat[es] in the actual movement of persons or things in interstate commerce." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing 29 C.F.R. § 776.23(d)(2) (2005); 29 C.F.R. § 776.24 (2005)); *see also* 29 U.S.C. § 207(a)(1) (mandating time-and-a-half for "employees . . . engaged in [interstate] commerce or in the production of goods for [interstate] commerce"). Second, an employee is subject to enterprise coverage if he is "employed in an enterprise engaged in commerce or in the production of goods for commerce," 29 U.S.C. § 207(a)(1), where commerce means "trade, commerce, transportation, transmission, or communication among the several States or between any state and any place outside thereof," *id.* § 203(b), and an "enterprise" is the activities performed by a person or persons who are (1) engaged in "related activities," (2) under "unified operation or common control," and (3) have a "common business purpose," *id.* § 203(r)(1). An employee may be subject to either type, or both types, of FLSA coverage. *See Ares*, 318 F.3d at 1056 (citing 29 U.S.C. § 207(a)(1)).

### C.   *Plaintiff Cured Their Original Pleading Defects*

To bring any claim under the FLSA, Plaintiff must demonstrate that he is covered under the FLSA. *Josendis*, 662 F.3d at 1299. "[T]he requirements to state a

claim of a FLSA violation are quite straightforward. The elements that must be shown are simply a failure to pay overtime compensation and/or minimum wages to covered employees and/or failure to keep payroll records in accordance with the Act." *Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008).

In the initial complaint, Plaintiff failed to allege facts showing that he was a covered employee. Accordingly, in the April 9, 2025, Report and Recommendation recommending dismissal with leave to amend, we found that "Plaintiff must make some positive assertions—not just negative averments of what he, or the employer at-issue, are not." [D.E. 17 at 11].

On April 24, 2025, Plaintiff filed the First Amended Complaint with bolstered factual content. Plaintiff added the following allegations, as relevant here:

9. Social Mobile is a provider of enterprise mobility solutions, specializing in the design and development of custom IoT and Android-based devices for major clients across industries such as healthcare, transportation, retail, and defense. The company manages all aspects of mobility projects, including hardware design, software integration, deployment, and ongoing support services for clients across the United States and around the world.

10. At all relevant times, Social Mobile's gross annual revenue exceeded $500,000.

11. Social Mobile customarily and regularly sells goods and services across state lines.

12. At all relevant times, Social Mobile employed two or more employees that customarily, continually, and regularly handled goods and materials that i) were purchased from a person or entity outside the state of Florida and/or ii) were purchased in Florida but had previously traveled through interstate commerce.

11

13. Upon information and belief, Social Mobile obtained and soclivited funds from non-Florida sources, accepted funds from non-Florida sources, used telephonic transmissions going over state lines to do its business, transmitted funds outside the State of Florida, used electronic means to market and run their business in a way that was not limited to Florida, and otherwise regularly engaged in interstate commerce during the relevant period.

14. Social Mobile, upon information and belief, accepts checks, wire transfers, and other forms of payments that are made or processed outside the state of Florida, and did so during the relevant period.

15. Social Mobile is an employer engaged in interstate commerce and subject to the FLSA.

. . .

17. Plaintiff was hired for the specific purpose of selling to AT&T, a relationship that Social Mobile wanted to grow.

18. Plaintiff, an inside sales employee, was tasked with meeting sales deliverables and targets.

. . .

21. Plaintiff's job was to sell.

[D.E. 21 at 2–3].

Notably, Plaintiff corrected the only deficiencies we highlighted from the initial complaint. By doing so, Plaintiff positively alleged facts that support a prima facie claim of coverage under the Act.  That is all that a Plaintiff must do at this stage. And because we must grant all reasonable inferences in Plaintiff's favor on a motion to dismiss, we agree with Plaintiff that these positive allegations of fact overcome the argument that more was required.  "To properly allege individual or enterprise coverage, [the Plaintiff] need not do much. Aside from stating the nature of his work and the nature of [his employer's] business, he must provide only straightforward

allegations connecting that work to interstate commerce." *Ceant v. Aventura Limousine & Trans. Serv. Inc.*, 874 F. Supp. 2d 1373, 1378 (S.D. Fla. 2012). Plaintiff's allegations here do more than recite conclusory statutory elements; enough facts are alleged that, if true, would support a case for FLSA coverage. That is sufficient. *See, e.g., U.S. Sec'y of Labor v. Labbe,* 319 F. App'x 761, 763 (11th Cir. 2008) ("Unlike the complex antitrust scheme at issue in *Twombly* that required allegations of an agreement suggesting conspiracy, the requirements to state a claim of a FLSA violation are quite straightforward."); *Demeter v. Little Gasparilla Island Fire & Rescue, Inc.*, No. 2:16-CV-264-FTM-38CM, 2017 WL 662006, at *2 (M.D. Fla. Feb. 17, 2017) (denying motion to dismiss FLSA complaint on challenge to individual coverage; ["Defendant] asserts that Plaintiffs do not allege that they are engaged directly and regularly in interstate commerce, and they only show tangential use of internet and telephone lines, which is insufficient. . . . The Court disagrees."); *Fernandez v. CheckAlt Eras, Inc.*, No. 20-CV-22746-UU, 2021 WL 7082947, at *4 (S.D. Fla. Jan. 7, 2021) ("The Court finds that Plaintiffs sufficiently allege the nature of Defendants' business, the nature of Fernandez's work, and the connection between that work and interstate commerce. And that is all that is required to properly allege coverage under the FLSA.").

Defendant, however, maintains that dismissal is still proper because his admissions in the EEOC charge (which the Court will consider as part of the record on the motion) fatally undermine the claim that he was misclassified. Specifically, Defendant argues that a self-admitted "Director of Carrier Sales" cannot be a covered

employee entitled to overtime. He admitted that he "trained" others on Defendant's core products, represented that his primary duties included "negotiat[ing] and execut[ing] strategic partner agreements" for Social Mobile, and was responsible for Social Mobile's "market campaigns thru partner newsletters, webinars and customers and sales events." These facts are all antithetical to a properly classified non-administrative employee entitled to overtime.

The problem Defendant has, however, is that on a motion to dismiss these representations are not enough to find, as a matter of law, that Plaintiff has zero chance of success on his claim. We must still draw all reasonable inferences in Plaintiff's favor, even in the face of these contradictory facts. In doing so, we agree with Plaintiff that a plausible case could still be made that he was improperly classified.

Whether an employee falls under the administrative exemption is a highly fact-intensive inquiry that depends on the particular circumstances of each case. *See* 29 C.F.R. § 541.700 (a) (providing that the "[d]etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole"); 29 C.F.R. § 541.202(b) (providing that "[t]he phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises"). As a job title is of little use for exemption purposes, courts look to the tests articulated by the Department of Labor's ("DOL") regulations under the FLSA in assessing the applicability of the FLSA's statutory exemptions.

Under these regulations, a key factual issue (which is not what a motion to dismiss is designed to tackle) is the "primary" duty that the employee undertook. *See* 29 C.F.R. § 541.700(b) (noting that "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement" and that "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion").

So, even if turns out that Plaintiff's "representations" from the EEOC charge were 100% correct upon a full factual review of the record, that may not be enough to categorically say Defendant has proven its exemption defense. An employee performs work "directly related to the management or general business operations" when the employee "must perform work directly related to assisting with the *running or servicing* of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a) (emphasis added). *See, e.g., Cotten v. HFS-USA, Inc.*, 620 F.Supp.2d 1342, 1347 (M.D. Fla. 2009) ("This prong is met if the employee engages in running the business itself or determining its overall course or policies, not just in the day-to-day carrying out of the business' affairs.") (citing *Talbott v. Lakeview Ctr., Inc.*, 2008 WL 4525012, at *4 (N.D. Fla. Sept. 30, 2008)) (quoting *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002)) (internal citations omitted). So arguably the exemption only "relates to employees whose work involves servicing the business itself—employees who can be described

15

as staff rather than line employees." *Greene v. Tyler Techs., Inc.*, 526 F. Supp. 3d 1325, 1339 (N.D. Ga. 2021) (citing U.S. DOL, Wage & Hour Div., Opinion Letter, 2010 WL 1822423, at *2 (Mar. 24, 2010)) (internal citation omitted).

This distinction is often referred to as the "production versus administrative" dichotomy. *Id.* (citing *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009) ("[W]e have drawn an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business."); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 694 (4th Cir. 2009) (employees "can be considered 'production' employees in those instances where their job is to generate (i.e., 'produce') the very product or service that the employer's business offers to the public.") (citing *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 9 (1st Cir. 1997)).

What this means is that even an employee who performs the tasks cited in Defendant's motion may still, in fact, be acting as a production employee – thus eligible for FLSA coverage – even though his work entails those type of senior responsibilities. As the Court in *Greene* put it, denying a defendant's motion for summary judgment in the process, "under the production-administrative dichotomy described above, Ms. Greene's work was clearly production rather than administrative" even though her work was vital for the company's customer relationships. *Id.* at 1340. And the "indispensable" nature of the employee's work was not enough to satisfy the administrative exemption

because "whether or not an employee is indispensable is insufficient to prove that her primary duties are administrative." *Id.* (citing *Clark v. J.M. Benson Co.,* 789 F.2d 282, 287 (4th Cir. 1986) ("The regulations emphasize the nature of the work, not its ultimate consequences. Thus, [the plaintiff's] apparent indispensability does not obviate the need to prove independently that her primary duty is 'directly related to management policies or general business operations.' ")).

In sum, even assuming her representations in the EEOC charge are proven, they may not be enough, without more record evidence, to show that the administrative exemption must apply as a matter of law. That means that we cannot decide this question on a motion to dismiss, leaving the parties instead with the burden of developing the full record and presenting that full record to the Court at summary judgment or the jury at trial. For now, Plaintiff has laid out a plausible legal theory, coupled with sufficient factual allegations, that he may be entitled to relief under the FLSA notwithstanding the importance of the duties that he performed for Defendant coupled with the level of supervision that Defendant relies upon. A full review of a complete record is still required to determine whether or not the administrative exemption applies in this case. A motion to dismiss is not the vehicle to do so.

## IV.   CONCLUSION

For the foregoing reasons, we hereby **RECOMMEND** that Defendants' motion to dismiss [D.E. 26] be **DENIED** and, further, find and Order that Defendant's Motion for Judicial Notice [D.E. 27] is **GRANTED** in part and **DENIED** in part.

17

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation and Order within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report (or a showing of clear error on the incorporated non-dispositive Order) *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. §636(b)(1); 11th Cir. R. 3-1; *see, e.g.*, *Patton v. Rowell*, 678 F. App'x 898 (11th Cir. 2017); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767 (11th Cir. 2016).

*Notwithstanding the filing of such objections, if any, Defendants shall file their answer to the Amended Complaint no later than January 12, 2026.*

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 29th day of December, 2025.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge